United States District Court for the Middle District of Pennsylvania

Hunter EL, a Moorish American citizen,
         petitioner

v.

David Ebbert, Warden         Case no. _____
S. Beaubeadorf, S/S Lieutenant
B. Tharp, Counselor,
         defendant(s)

**FILED**
**SCRANTON**
SEP 0 7 2018
PER _____
DEPUTY CLERK

## CIVIL ACTION

## STATEMENT OF FACTS

1) Petitioner's nationality is Moorish American, and petitioner is a charter member of the Moorish Science Temple of America, a governmental unit. The law states "no taxation without representation", and

2) Petitioner is being held at #05634-090, U.S.P. Lewisburg, P.O. Box 1000, Lewisburg, PA 17837; and

3) Defendant(s) are employed at Lewisburg USP, P.O. Box 1000, 2400 Robert F. Miller Drive, Lewisburg, PA 17837; and

4) Defendant(s) are unconstitutionally censoring petitioner's mail in violation of petitioner's due process right(s) and petitioner's First Amendment right to send and receive

page 1 of 8

mail. Accordingly, the Supreme Court has held unconsti-
tutional the censorship of prisoner mail when prison officials
censor simply by indulging their "personal prejudices and
opinions", while purporting to apply constitutional standards,
Pell v Procunier 417 U.S. 817, 832, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974);
Procunier v Martinez 416 U.S. 396, 417, 94 S. Ct. 1800, 40 L. Ed. 2d
224, (1974); and

5) Petitioner arrived at USP Lewisburg on February 15, 2018 and
was placed in D-Block. Approximately a week or two later,
petitioner was moved to punitive segregation in B-Block,
without any reason nor explanation nor chance to appeal.
Upon moving to B-Block, petitioner was automatically placed
on "Enhanced Restrictions on incoming general correspondence"
notice was received on 5-2-18 see Exhibit B. Again this
was done without my right to appeal any disciplinary measure
taken against me; and

6) Petitioner has been in federal prison approximately 13 years,
and at no time has petitioner been placed on regular
"Restricted General Correspondence", which is authorized
by 28 CFR 540.15, see Exhibit C. The Warden at USP
Lewisburg has went above and beyond and placed petitioner
on "Enhanced Restrictions on incoming general correspondence,
see Exhibit B; and

page 2 of 8

7) Using Program Statement 5265.14, specified in Exhibit B, the Warden has authorized Counselor B. Tharp, to deliver petitioner's general and legal mail to SIS S. Beaubendorf to hold and inspect instead of mailing it out, in lieu of the fact that the Code of Federal Regulations specifies, outgoing legal mail may NOT be inspected, and it is to leave the institution within 24 hours of receipt by staff; and

8) Using this same Program Statement 5265.14, see Exhibit B, the Warden is allowing his SIS S. Beaubendorf to copy my mail (chaff copy), hold my mail for weeks and months in violation of Program Statement 5800.10 Section 9.d.(7) which states it is a requirement to generally deliver mail within 24 hours and packages within 48 hours, even during investigatory processes, see also Exhibit G; and

9) Using this same Program Statement 5265.14, see Exhibit B, petitioner is also deprived of family pictures (no pictures), though other prisoners not on "Enhanced Restrictions on incoming general correspondence" may receive all of their pictures. SIS S. Beaubendorf claims these pictures are being placed in my property but, there is NO proof of this and what could possibly justify withholding petitioner's family pictures, and even property for 7 months now

except PERSECUTION and OPPRESSION; and

10) Petitioner attempted to appeal Exhibit B, following the procedures set forth in 28 CFR 540.15, see Exhibit C. Petitioner gave his appeal to Captain Rhodes on 5/4/2018, while the Captain was making rounds in B2, see B2 camera footage on 5/4/2018 before 3:00pm. Exhibit E is a copy of this appeal, which was never answered, even though required by 28CFR 540.15, see Exhibit C; and

11) The Warden has used Program Statement 5265.14, in Exhibit B, to in fact waive all conditions, set for mail, by the Code of Federal Regulations, to unconstitutionally censor my mail, based upon his SIS. S. Beauberdorf's "personal prejudices and opinions"; and

## SPECIFIC CLAIM

12) The Warden has imposed "Enhanced Restrictions on incoming general correspondence" upon petitioner, which is a more stringent restriction than allowed by 28 CFR 540.15, and which is specifically prohibited by the Program Statement Directives Management Manual, which specifies conditions required by regulations may NOT be waived, see Exhibit D; and

13) The Program Statement 5265.14 cited in Exhibit B, as the Warden's authority to impose "Enhanced restrictions on general correspondence", is unconstitutionally and impermissibly vague, on due process grounds and in the first amendment context, because NO NOTICE of this Restriction NOR how to appeal it, is given in B.O.P. policy NOR the CFR, which is

page 4 of 8

a substantive due process violation. Furthermore, the Warden himself has guessed at the meaning of Program Statement 5265.14, see Connally v Gen. Constr. Co., 269 US 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Kolender v Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A vagueness challenge nullifies ambiguous laws that "chill" protected first amendment activities, see Kreimer v Bureau of Police for the Town of Morristown, 958 F.2d 1242, 1266 (3rd Cir. 1992); and

14) Petitioner claims that the Warden has guessed at the meaning of Program Statement 5265.14 because this Program Statement is Exhibit H, and this Program Statement specifically instructs the Warden that he may limit the inmate's correspondence as specified in the Program Statement on Correspondence, see Exhibit H! The Program Statement on Correspondence is Exhibit C, which only specifies that the Warden may impose "Restricted General Correspondence", after following the due process procedures set forth therein! The Program Statement cited by the Warden in Exhibit B does NOT authorize the Warden to impose "Enhanced Restrictions on incoming general correspondence" which in turn does NOT authorize the Warden's staff (other defendant(s)) to do any of the violations set forth paragraphs 7-11 of this Civil Action; and

15) The Warden has interpreted Program Statement 5265.14 (Exhibit H) to allow him to violate that Program Statement itself (5265.14) and violate Exhibit C and Exhibit D, which means it is unconstitutionally vague or the Warden is knowingly acting arbitrarily; and

page 5 of 8

16) Petitioner was also deprived of his First amendment right to access the court when on May 31, 2018 petitioner's 2241 Case no. 3:18-cv-0894, was dismissed. The allegation was that Petitioner did not send an informa pauperis form see Exhibit F. The institution's records will verify that on 5-3-2018 a six-month account balance was printed for petitioner. A review of the institution's camera footage on 5-3-2018 in B2 will verify that after haircuts that night, petitioner handed staff B. Molek legal mail, which staff signs on door in presence of prisoner. If the Court did not receive this legal mail, it is the fault of SIS S. Beaubendorf not sending it out, like he does any mail going to the Office of Inspector General or any mail in which you are telling your family to call the Office of Inspector General see Exhibit A! Because this institution has a no legal copy rule, I could not get copies of my DNO reports to re-file so, I was prejudiced in this manner.

## FEDERAL TORT CLAIMS ACT

17) In Exhibit B, the defendant(s) have admitted in writing to destroying my mail after 60 days, which is intentional damage to property under the Federal Tort Claims Act, and because it occurred in the state of Pennsylvania, Pennsylvania law governs; and

18) The Mail Management Manual Program Statement 5800.10, Section III (Authority for Disposal of Mail) specifically states, "Authority to dispose of or destroy mail addressed to a specific person rests solely with the USPS. Bureau staff have no such authority, and shall return undelivered mail to the local USPS; and

page 6 of 8

19) 18 U.S.C. § 1702 Obstruction of Correspondence states, "whoever destroys correspondence shall be imprisoned not more than five years or fined or both; and

20) For the reasons specified in number(s)-paragraphs 17, 18, and 19 the defendant(s) have committed the intentional tort of damage and destruction of property under the Federal Tort Claims Act.

## SUMMARY

By the aforementioned undisputable FACTS, petitioner has clearly shown by law and regulation that defendant(s) have:

A) inflicted irreparable injury upon petitioner, by depriving petitioner of the first amendment right to send and receive mail; and

B) deprived petitioner of the Due Process right(s) of Notice and Appeal see Prison Legal News v Jones, U.S.D.C. (E.D. Tenn.), Case no. 3:15-cv-00452-TAV-CCS; and

C) deprived petitioner of First Amendment right to access the court; and

D) Intentionally damaged and destroyed petitioner's property in the state of Pennsylvania.

## REMEDY SOUGHT

Loss of First amendment freedoms constitute IRREPARABLE INJURY to the prisoner, for even minimal periods of time. For remedy petitioner seeks damages in the amount of $25,000.00 (twenty five thousand dollars) for intentional property damage under the Federal Tort Claims Act; and petitioner seeks damages in the amount of $100,000.00 (One Hundred

Thousand dollars) for the irreparable injury suffered by deprivation of petitioner's first amendment right(s), a total of $125,000.00 (One Hundred Twenty Five Thousand Dollars).

8-30-18
Date

/s/      Hunter El

Hunter-El
# 05634-090
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA. 17837

page 8 of 8

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Certified Mail Fee
$ 3.90

Aaron Hunter-EL
05634-090
B222
Postmark
Here

B-222

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

18 2018

Postage
$ .50¢

Total Postage and Fees
$ 4.90

Sent To  Janie Brownridge
Street and Apt. No., or PO Box No. 1930 West 119th Street
City, State, ZIP+4® Chicago, Illinois 60643

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

7015 1730 0000 7823 6105

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*.

Certified Mail Fee
$ 3.90

Aaron Hunter-EL
★05634-090
B223
Postmark
Here

Extra Services & Fees (check box, add fee as appropriate)
☒ Return Receipt (hardcopy)          $ 3.45
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

JUN 13 2018
B-223

Postage
$ 0.50¢

Total Postage and Fees
$ 8.00

Sent To  U.S. Dept. of Justice, Office Inspector General
Street and Apt No., or PO Box No. 500 W. Madison Street, Suite 1101
City, State, ZIP+4® Chicago, Illinois 60661

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

7015 1730 0000 7823 5856

---

1) 7015 1730 0000 7823 5856 sent July 1st, 2018 to Office of Inspector General (still in transit as of 8/30/18)

2) 7015 1730 0000 7823 6105 sent June 14, 2018 to Janie Brownride, instructing her to call OIG Chicago office about SIS S. Beauberdorf (still in transit as of 8/30/18)

Exhibit A



USP LEWISBURG SMU

ITEM WAS PHOTOCOPIED

COPY PROVIDED TO INMATE

per policy 5265.14

B-273

Aaron Hunter EL - OS 634-090
united States penitentiary
P.O. Box 1000
Lewisburg, PA 17837

17837-100000

Exhibit Janiel Brownridge
B 1450 West 114th st.
chicago IL 60643



**U.S. Department of Justice**
Federal Bureau of Prisons
*United States Penitentiary*
*2400 Robert F. Miller Drive*
*P. O. Box 1000*
*Lewisburg, PA  17837*

---

## NOTICE OF ENHANCED RESTRICTIONS
## ON INCOMING GENERAL CORRESPONDENCE

Effective immediately, you are being placed on enhanced
restricted General Correspondence.  Until further notice, you
receive a photocopy of your incoming general correspondence.
The original will be maintained for 60 days and then destroyed.
Personal photographs will be stored in your property.  2 PHOTOS

Per Program Statement 5265.14, Correspondence, "[t]he Warden
shall establish and exercise controls to protect individuals,
and the security, discipline, and good order of the institution.
The size, complexity, and security level of the institution, the
degree of sophistication of the inmates confined, and other
variables require flexibility in correspondence procedures."

Exhibit B

## 7. RESTRICTED GENERAL CORRESPONDENCE

**§ 540.15 Restricted general correspondence.**

**(a) The Warden may place an inmate on restricted general correspondence based on misconduct or as a matter of classification.**

For this restriction, the term "classification" is used to identify categories of behavior.

**Determining factors include the inmate's:**

**(1) Involvement in any of the activities listed in § 540.14(d);**

28 CFR § 540.14(d) is contained in Section 6.d. of this Program Statement.

**(2) Attempting to solicit funds or items (e.g., samples), or subscribing to a publication without paying for the subscription;**

**(3) Being a security risk;**

**(4) Threatening a government official; or**

**(5) Having committed an offense involving the mail.**

**(b) The Warden may limit to a reasonable number persons on the approved restricted general correspondence list of an inmate.**

A recommendation to place an inmate on restricted correspondence is made by the unit team during the inmate's program review or by the Unit Disciplinary Committee (UDC) or Disciplinary Hearing Officer (DHO), when restricted correspondence is required by an infraction of an institution rule.

Action taken by the UDC or DHO as a disciplinary sanction is ordinarily based on a finding of violation of correspondence regulations.

**(c) The Warden shall use one of the following procedures before placing an inmate on restricted general correspondence.**

**(1) Where the restriction will be based upon an incident report, procedures must be followed in accordance with inmate disciplinary regulations (part 541, subpart B of this chapter).**

Part 541, subpart B, refers to the Program Statement **Inmate Discipline and Special Housing Units.**

pro

**1**

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT C

08505094

**(2)  Where there is no incident report, the Warden:**

**(i)  Shall advise the inmate in writing of the reasons the inmate is to be placed on restricted general correspondence;**

**(ii)   Shall give the inmate the opportunity to respond to the classification or change in classification; the inmate has the option to respond orally or to submit written information or both; and**

**(iii)  Shall notify the inmate of the decision and the reasons, and shall advise the inmate that the inmate may appeal the decision under the Administrative Remedy Procedure.**

**(d)  When an inmate is placed on restricted general correspondence, the inmate may, except as provided in §§ 540.16 and 540.17:**

28 §§ CFR 540.16 and 540.17 refer to Sections 8 and 9, respectively, of this Program Statement.

**(1)  Correspond with the inmate's spouse, mother, father, children, and siblings, unless the correspondent is involved in an violation of correspondence regulations, or would be a threat to the security or good order of the institution;**

The word "spouse" includes a common-law relationship which has previously been established in a state which recognizes this status.  In states that do not, a common-law relationship is not considered "immediate family."  For determination of applicable state laws, consult the Regional Counsel.

**(2)  Request other persons also to be placed on the approved correspondence list, subject to investigation, evaluation, and approval by the Warden; with prior approval, the inmate may write to a proposed correspondence to obtain a release authorizing an investigation; and**

**(3)  Correspond with former business associates, unless it appears to the Warden that the proposed correspondent would be a threat to the security or good order of the institution, or that the resulting correspondence could reasonably be expected to result in criminal activity.   Correspondence with former business associates is limited to social matters.**

**Verification Procedures.**  Each year it becomes more difficult to obtain information from law enforcement agencies on proposed correspondents.  For this reason, staff attempt to secure information from other sources, including the inmate, the proposed correspondent, and the U.S. Probation Officer.  Each institution develops its own verification procedures, depending on the

pro|

2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT C

08505094

sophistication of its inmates and resources for verification.

A release from the individual in question may be necessary (for example, under the Privacy Act) to complete the investigation.  If a release is needed, the inmate is responsible for obtaining it, and is permitted to write to the correspondent for this purpose.

**(e)   The Warden may allow an inmate additional correspondence with persons other than those on the inmate's approved mailing list when the correspondence is shown to be necessary and does not require an addition to the mailing list because it is not of an ongoing nature**



EXHIBIT C

**3**

pro

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

08505094

## 5.  CONDITIONS OF CONFINEMENT

Conditions of confinement for SMU inmates are more restrictive than for general population inmates.  An inmate's individual conditions will be limited in accordance with this policy as necessary to ensure the safety of others, to protect the security or orderly operation of the institution, or protect the public.  Individual conditions may be further limited as part of a disciplinary sanction imposed pursuant to 28 CFR part 541, except as specified below.  Individual conditions are ordinarily made less restrictive when an inmate progresses from level to level of the SMU program.  The cell door of each inmate in the SMU must be clearly marked with the inmate's level and any enhanced security needs for that inmate.

The Warden must request a policy waiver, in accordance with the Program Statement **Directives Management Manual,** to impose restrictions more stringent than those allowed by this Program Statement or other applicable national directives.  Conditions required by regulations, however, may not be waived.

a.  **Minimal Conditions.** Except as provided above, minimal conditions of confinement for SMU inmates are as follows, and in accordance with the Program Statement **Occupational Safety, Environmental Compliance, and Fire Protection**, and directives referenced in this Program Statement.

(1)  **Environment.**  Living quarters are well ventilated, adequately lighted, appropriately heated, and maintained in a sanitary condition.

(2)  **Cell Occupancy.**  Living quarters normally house only the number of occupants for which they are designed.  The Warden, however, may authorize additional occupants as long as adequate standards can be maintained.

(3)  **Bedding.**  Inmates receive a mattress, blankets, a pillow, and linens for sleeping.  Inmates have necessary opportunities to exchange linens.

(4)  **Clothing.**  Inmates receive adequate institution clothing, including footwear.  Inmates have opportunities to exchange clothing or have it washed.

(5)  **Personal Hygiene.**  Inmates have access to a washbasin and toilet.  Inmates receive necessary personal hygiene items.  Inmates have the opportunity to shower and shave at least three times per week. Inmates have access to necessary hair care services.

(6)  **Meals.**  Inmates receive nutritionally adequate meals and may be required to eat all meals in their living quarters.

(7)  **Recreation.**  Inmates have the opportunity to exercise outside their individual quarters for at

pro

**1**

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT D

08505094

TO: Warden David J. Ebbert under 28 CFR § 540.15 (c)(2)(ii)

FROM: Aaron Hunter-EL *05634-090   Cell* B220

On 5-2-2018 A.D., I received a "Notice of Enhanced Restrictions on Incoming General Correspondence," which says 7 photos were taken from me and placed in my property and that there was no letter. It is impossible for me to know if there was a letter or not when no requirements of 28 CFR § 540.15 were followed. The Notice then quotes Program Statement 5265.14, which is unconstitutionally and impermissibly vague, see Jones-bey v Mich. Dept. of Corr., 2006 U.S. Dist LEXIS 70216, Case no. 05-cv-72817-DT, September 28, 2006, Decided (First Amendment Case).

I, Hunter-EL, Claim that the "Notice of Enhanced Restricted General Correspondence" is REPRISAL for my use of the Prison grievance process, and my nationality (Moorish American) because there were Absolutely NO Procedures followed as required by 28 CFR § 540.15, it was done Arbitrarily! This Constitutes a Procedural Due Process violation under the Fifth Amendment, and a violation of my First Amendment right to receive mail! It is PROHIBITED by the Fifth Amendment to deprive me of my Property without Due Process of Law, and Conspiracy to deprive me of my Constitutional Rights or Oppress them is a Federal Crime under 18 U.S.C. § 241! Destroying my Personal Property (mail) after 60 days is prohibited by the Fifth Amendment of the National Constitution, and is Property Damage under

Exhibit E
page 1 of 4

28 CFR § 14.1 to 14.11 and 28 CFR § 543.30 to 543.32.

"III. Authority for Disposal of Mail," specifically states that Bureau Staff, have _NO such authority_!

28 CFR § 540.2(a)(2) specifies that, "Restricted General Correspondence means general correspondence which is limited to a list of authorized correspondents." NO WHERE does the CFR give the Warden the authority to _copy mail_, _destroy it_, nor _deprive me of my personal pictures_. The Warden David J. Ebbert is acting _Arbitrarily_ under _Color of Authority_ and circumventing B.O.P. policy REQUIREMENTS!

(Fed. R. Civ. P. Rule 56 - Summary Judgment Motion)

1) There is no such thing as "Enhanced Restricted General Correspondence"; it's _NOT_ mentioned _NO WHERE_ in the CFR; and

2) Warden David J. Ebbert committed a Procedural Due Process Violation under the Fifth Amendment by acting arbitrarily and _NOT_ following the REQUIREMENTS of 28 CFR § 540.15 (c)(1), (c)(2)(i), (c)(2)(ii), (c)(2)(iii), and (d)(1), (d)(2), and (d)(3); and

3) CFR gives Warden David J. Ebbert, no such authority to copy personal property (mail) and give the copy to the prisoner, _NOR_ deprive me of my personal property (pictures) received through the mail without due process of law; and

Exhibit E
page 2 of 4

4) Program Statement 5265.14 is unconstitutionally vague because it's being applied as mandatory, and is impermissibly vague as B.O.P. policy; and

5) the "Notice of Enhanced Restriction on General Correspondence" received by Hunter-EL on 5-2-2018 A.D., is a REPRISAL for my use of the Prison grievance procedure and my nationality (Moorish American); and

6) The Warden David J. Ebbert is acting arbittarily under Color of Authority; and

7) Punishment is being inflicted upon a Moorish American citizen without a judicial trial, which is a Bill of Attainder prohibited by Article 1, Section 9, Clause 3 of the Constitution, it's being inflicted without any Semblance of Due Process of Law, prohibited by the Fifth Amendment, and punishment inflicted in violation of the Constitution is Cruel and Unusual Punishment prohibited by the Eigth Amendment; and

8) Constitutional violations REQUIRE General Damages, see Parish v. Johnson, 6th Cir., 800 F.2d 600, 1986 U.S. App. LEXIS 29455!

* SMU Policy and the Program Statement Directives Management Manual specify," that for the Warden to impose restrictions more stringent than allowed by SMU Policy or National Directives, the Warden must Request a policy waiver but, conditions required by regulations (CFR) may NOT be waived"!

page 3 of 4          Exhibit E

For the foregoing 8 reasons, the Constitution and laws made in pursuance thereof REQUIRE that Summary Judgment be granted.

Truthfully Submitted,

/s/

Date                                              Aaron Hunter-EL

I do solemnly swear that the facts stated herein are true and correct to my knowledge.

Subscribed and Sworn to Before me on this day of _____ 2018 A.D.

/s/

Notary Public

Exhibit E

page 4 of 4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:       **Hunter-El v. Ebbert**                :
                                                    :
                                                    :        No. 3:18-CV-0894
Inmate:      Aaron Hunter-El                        :
                                                    :        (Judge Munley)
ID No.       05634-090                              :

## ORDER

This habeas corpus action was filed on April 26, 2018, without a filing fee or an application to proceed *in forma pauperis*. (Doc. 1).

Accordingly, an Administrative Order issued on April 30, 2018 in which the petitioner was informed that this case would be dismissed without prejudice unless, within thirty (30) days, he either paid the statutory filing fee of $5.00 or filed a properly completed application to proceed *in forma pauperis*. (Doc. 4).

More than thirty (30) days have elapsed and the Petitioner has not submitted the filing fee, nor the appropriate application to proceed *in forma pauperis*.

**THEREFORE, IT IS ORDERED THAT** this action is dismissed, without prejudice, and the Clerk of Court shall close this file.

s/ James M. Munley

**JAMES M. MUNLEY**

**United States District Court**

Exhibit F

DATE:  May 31, 2018

(3)  **Mail Monitoring**.  Each institution establishes procedures for monitoring incoming and outgoing mail.  Institutions may wish to give closer scrutiny to incoming and outgoing mail of inmates, for example, who:

1. Participated in criminal activity of a sophisticated nature.
2. Committed crimes that involved mail or fraudulent schemes.
3. Are considered escape risks.
4. Present management problems (i.e., interference /disruption of the orderly running of the institution).

The staff member designated to supervise correspondence may keep a list of such inmates. Monitoring procedures may not interfere with mail handling.



Exhibit 6 (G)

1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

pro

30222057

official mail.   Inmates shall not be provided or sold metered

mail strips.   *

**CHAPTER 3**

**INMATE MAIL**

**301.   GENERAL**

All mail room staff shall be thoroughly familiar with the provisions of the Program Statements on Correspondence, which contains criteria for sending and receiving inmate

correspondence; Inmate Personal Property, which provides guidance as to what constitutes inmate contraband and the processing of this material; and Incoming Publications, which provides guidance related to the treatment of incoming newspapers, magazines,

books, etc.

Size and complexity of an institution, the degree of sophistication of the inmates confined, and many other variables (e.g. physical plant) require flexibility in correspondence procedures. The Warden may establish controls to protect inmates and maintain the institution's security, discipline, and good order. For example, if an inmate attempts to solicit funds or items (e.g., samples) or subscribes to a publication without paying for the subscription, staff may consider limiting the inmate's correspondence as specified in the Program Statement on Correspondence.

It is important that mail room staff conduct a continuous dialogue with other staff, particularly Unit Managers and the Captain, so that potential inmate management problems can be mutually identified and resolved.   Also, Inmate Systems Managers and mail room staff must insure that inmates who do not have

ready access to mail services can participate, as appropriate, in the correspondence program.

If a piece of incoming controlled mail (registered, certified, etc.) is lost or misplaced or a problem occurs with a money

order, etc., the sender (not the inmate) must initiate the traces and follow-up action with the USPS or private carrier.   The

pro|

**24**

© 2017 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.


Exhibit A

30222057

## Cover Letter

The law states, "there can be no taxation without representation"!

Enclosures:

1) Civil Action - Eight-(8) pages

2) Exhibits  A-N  fourteen-(14) pages

Basics of Action:

1) deprivation of First Amendment right to send and receive mail

2) deprivation of due process right to Notice and Appeal

3) deprivation of right to access court (First amendment)

4) intentional destruction of property under Federal Tort Claims Act



USA

HARRISBURG PA DC
TUE 04 SEP 2018 AM

CERTIFIED MAIL

7015 1730 0000 7879 6449

Inmate Name: Aaron Hunter EL
Register Number: 05624-090
United States Penitentiary
P.O. Box 1000
Lewisburg, PA 17837   SEP 04 2018

RECEIVED
SCRANTON

SEP 07 2018

PER _____ DEPUTY CLERK

United States District Court
Middle District of Pennsylvania
William J. Nealon Federal Bldg. + U.S. Courthouse
235 North Washington Avenue
P.O. Box 1148
Scranton, PA. 18501 - 1148

Special Mail
8-20-18